UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEREK GREENSPAN,<br><br>                *Plaintiff*,<br><br>v.<br><br>CDW LLC and PETER KREBILL,<br><br>                *Defendants*. | Civil Action No.:<br>21-cv-12734 PGS-DEA<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on a motion to dismiss (ECF No. 3) filed by Defendants CDW LLC ("CDW") and Peter Krebill ("Krebill") (collectively referred to as "Defendants"), as well as Plaintiff Derek Greenspan's motion to amend the complaint. (ECF No. 11). Oral argument was heard on March 21, 2022. The Court has diversity jurisdiction under 28 U.S.C. § 1332. For the reasons set forth below, Plaintiff's motions are granted in part and denied in party.

**I.**

Plaintiff Derek Greenspan ("Plaintiff" or "Greenspan") is a citizen of New Jersey and was employed approximately between August 2007 and April 2021 as an "Executive Account Manager" for CDW.[1] (Compl. at ¶¶1-4, ECF No. 1-1).

---

[1] Defendants' opposition asserts that CDW LLC was improperly plead as Defendant because Plaintiff was employed by CDW Direct LLC, itself a subsidiary of CDW LLC. (Notice of Motion to Dismiss at 1, ECF No. 3).

1

CDW is a Delaware corporation with a principal place of business in Illinois while Mr. Krebill, Plaintiff's superior at CDW, is a resident of and employed in Illinois. (Notice of Removal at ¶¶8-9, ECF No. 1). Plaintiff's job entailed the sale of IT products and services. (Compl. at ¶4).

In 2020, Plaintiff's compensation was approximately $325,000, part of which was derived from incentivized sale commissions (referred to as "spiffs"). The spiffs were approved by each client or vendor, tracked by CDW's internal tracking system ("AMP") and paid out as separate line items in each employee's paycheck. *Id.* at ¶¶6-7. In or around February 2021, Plaintiff's accrued spiffs within AMP were allegedly reduced from $132,000 to $3,000. *Id.* at ¶8.

Concerned about the discrepancy, Plaintiff emailed Mr. Krebill and the two met several days later when Mr. Krebill explained Plaintiff's spiffs had not previously been "capped" when they should have been. *Id.* at ¶9. Plaintiff was reportedly suspicious but "quietly accepted" the explanation. *Id.* at ¶10. The $3,000 in spiffs was paid to Plaintiff in February 2021, followed by $20,000 later that month and by $10,000 in a March 2021 paycheck. According to Plaintiff, he was underpaid by $99,000. *Id.*

In or about March 2021, Plaintiff became sick with COVID-19 and was on sick leave, fully approved by CDW. *Id.* at ¶11. Upon his return to work in early April 2021, CDW's human resources reportedly informed Plaintiff that CDW had

2

opened an investigation into Plaintiff's "handling of the matter regarding his 'spiffs[.]'" *Id.* at ¶12. At some point during the course of investigation, Plaintiff "asked management for an update on the investigation's process[.]" *Id.* at ¶13. At a later time, investigators inquired if Plaintiff had spoken to anyone regarding the investigation, to which he answered no. *Id.*

On or about April 19, 2021, Mr. Krebill met with Plaintiff, and Krebill advised Plaintiff that he had lied to the investigators concerning the investigator, and this misrepresentation caused Plaintiff's termination. *Id.* at ¶14. Plaintiff reportedly received no other written explanation for his termination. *Id.*

## II.

On or about May 11, 2021, Plaintiff filed a Verified Complaint against Defendants in the Superior Court of New Jersey for Monmouth County, alleging eight (8) counts: (1) constructive discharge; (2) violation of New Jersey's Conscientious Employee Protection Act; (3) negligent hiring; (4) vicarious liability; (5) wrongful dismissal; (6) breach of contract; (7) breach of the implied covenant of good faith and fair dealing: and (8) intentional infliction of emotional distress. *Id.* at ¶¶16-62.

On June 25, 2021, Defendants filed the instant motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 3).

On December 24, 2021, Plaintiff filed his motion to amend the complaint with a proposed amended complaint. (ECF No. 11).

## III.

Under Fed. R. Civ. P. 8(a)(2), a complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" To survive a motion to dismiss for failure to state a claim, the complaint must allege "enough facts to state a claim of relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6). *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d. Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires showing more than just the possibility that the defendant acted unlawfully. *Id.*

In reviewing a motion to dismiss, the Court "accept[s] as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Monroe v. Beard*, 536 F.3d 198, 205 (3d. Cir. 2008). The court should disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements." *Santiago v. Warminster Township*, 629 F.3d 121, 128 (3d. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

The Third Circuit set forth a three-part test for determining whether a complaint may survive a motion to dismiss for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (alteration in original) (quoting *Iqbal*, 556 U.S. at 675, 679).

### IV.

In Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff voluntarily withdrew Count One (claim for constructive discharge) and Count Three (negligent hiring), so both counts are dismissed. (Pl. Opp. at 7-8, ECF No. 5).

In Count Two, Plaintiff alleges wrongful termination and retaliation under the New Jersey Conscientious Employee Protection Act ("CEPA") (N.J.S.A. 34:19-1, et seq.). To sustain such a claim, Plaintiff must allege that he engaged in some form of protected whistleblowing, and suffered retaliation through an adverse employment action. *See McCullough v. City of Atlantic City*, 137 F. Supp. 2d. 557, 573 (D.N.J. 2001). Because Plaintiff has failed to show he engaged in any

protected form of whistleblowing as defined by CEPA,[2] the motion to dismiss Count Two is granted.

In Count Five, Plaintiff claims a common law wrongful dismissal alleging that he was terminated for requesting an update on the spiff investigation. (Compl. at ¶¶44-46). New Jersey has a "presumptive preference in favor of at-will termination" and so an "employee [will have] a claim for wrongful discharge only when the discharge is contrary to a clear mandate of public policy." *See Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 46 (3d Cir. 2015) (citation omitted). Plaintiff's own allegations indicate that his termination was the result of an alleged fabrication about whether he talked with other people about his spiff income. Further, Plaintiff failed to indicate what public policy his discharge violated.[3] *See Santiago*, 629 F.3d at 128. Accordingly, the motion to dismiss Count Five is granted.

Plaintiff's Count Six claim of breach of an employment contract has been sufficiently plead. A claim for breach of contract under New Jersey law requires: (1) the existence of a valid contract; (2) breach by the defendant; (3) performance

---

[2] Whistleblowing under CEPA includes: (1) the disclosure or threat to disclose an employer's wrongful or illegal activities; (2) testimony before a public body regarding an employer's unlawful conduct; or (3) objection or refusal to participate in activities that are unlawful or violate public policy. *McCullough*, 137 F. Supp. 2d. at 572 (citing N.J.S.A. § 34.19-3).
[3] Such public policy is to be sourced from legislation, administrative rules, regulations, administrative decisions, and judicial decisions. *See Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72 (1980).

6

by the plaintiff; and (4) damages resulting from the defendant's breach. *See Sciore v. Phung*, 2021 U.S. Dist. LEXIS 11328, at *6 (D.N.J. Jan. 18, 2021); *see also Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016). The basic elements of a valid contract under New Jersey law are: (1) an offer by the promisor to act or forebear in some way; (2) acceptance by the promisee of the promisor's offer; and (3) fair consideration paid by the promisee in exchange for the promisor's performance. *See Stewart v. Greyhound Lines, Inc.*, 2012 U.S. Dist. LEXIS 461, at *9 (D.N.J. Jan. 4, 2012) (citing *Am. Handkerchief Corp. v. Frannat Realty Co.*, 17 N.J. 12, 17 (1954)). Here, Plaintiff worked for CDW in exchange for compensation, composed in part by payment of spiffs. Where CDW allegedly proceeded to abruptly reduce the total spiffs paid to Plaintiff, contrary to their standing terms of employment, Plaintiff suffered damages due to CDW's breach. Defendants' motion to dismiss is therefore denied with respect to Count Six.

In Count Seven, Plaintiff claims a breach of the implied covenant of good faith and fair dealing. "An implied covenant of good faith and fair dealing is present in all contracts governed by New Jersey law." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 169-70 (3d Cir. 2001) (citing *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997)). Every contract contains "an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the

contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing." *See Sons of Thunder*, 148 N.J. at 420 (internal citation and quotation omitted). As such, the breach of the implied covenant should be part of the breach of contract claim, and need not be alleged separately. It should be addressed in a similar manner in the Amended Complaint. Defendants' motion to dismiss Count Seven is granted.

Plaintiff's Count Eight, claiming intentional infliction of emotional distress ("IIED"), alleges that Defendants engaged in the aggregate conduct detailed throughout the complaint "with the intention of causing, or with reckless disregard of the probability of causing emotional distress in Plaintiff." (Compl. at ¶¶57-58). To sustain an IIED claim under New Jersey law, Plaintiff must show: (1) the defendant intended to cause emotional distress; (2) the conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the plaintiff's emotions distress is severe. *See Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. Aug. 21, 2001) (citation omitted). Courts have regularly found that "it is particularly difficult to establish [an IIED claim] in the employment context." *Id.* Here, Plaintiff has neither shown that the Defendants acted with the intent to emotionally distress Plaintiff, nor that Defendants' conduct was extreme or outrageous. *See id.* Further, Plaintiff alleges only cursory conclusions that he suffered emotional distress despite the tort requiring a showing

8

of "severe emotional distress."[4] As such, Plaintiff has not sufficiently plead the claim. The motion to dismiss Count Eight is granted.

Finally, Count Four asserts a cause of action based on *respondeat superior*; but there are no remaining tort claims against Mr. Krebill. In addition, *respondeat superior* does not apply to CDW. As such, Defendant's motion to dismiss is granted. *See Hoffman v. Silverio-Delrosar*, 2021 U.S. Dist. LEXIS 111672, at *4 (D.N.J. Jun. 15, 2021) (citing *Carter v. Reynolds*, 175 N.J. 402 (2003).

## V.

Plaintiff moves to amend the Complaint which customarily granted; but in this case, the request requires more analysis.

The standard for motions to amend is a liberal one as Rule 15(a)(2) provides that "court[s] should freely give leave when justice so requires." *Spartan Concrete Products, LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019). However, leave to amend may be denied when there is undue delay, bad faith, prejudice, or futility. *See id.* (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Futility arises where the amended complaint fails to state a claim upon which relief can be granted and is considered "under the same standard of legal sufficiency as

---

[4] Severe emotional distress refers to "any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, including ... posttraumatic stress disorder." *Taylor v. Metzger*, 152 N.J. 490, 515 (1998).

applie[d] under Rule 12(b)(6)." *See Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008) (citing *Shane*, 213 F.3d at 115).

In this case, the proposed amended complaint has some beneficial amendments, and others are futile. The beneficial amendments of the proposed amended complaint include:

1. Amending the name of Defendant from CDW LLC to CDW Direct LLC (ECF No. 11-2, ¶ 1);

2. adding supplemental facts on the spiff payment procedure (ECF No. 11-2, ¶ 7);

3. clarifying that the spiffs were paid by CDW's vendors (Brother) and passed through CDW Direct, and then paid to Plaintiff (ECF No. 11-2, ¶ 7);

4. deleting two causes of action – constructive discharge and negligent hiring, as Plaintiff acknowledged in its brief and at oral argument.

On the other hand, the proposed amended complaint incorporates some issues that are futile. They are:

1. There are no facts supporting a cause of action under CEPA (Count Two). That is, a CEPA arises out of the activities enumerated in footnote 3 of this Memorandum. During oral argument, Plaintiff proffered some nebulous public policy, but nothing substantive. As such, the CEPA count is futile.

2. Similarly, the proposed amended complaint lacks any substantiative public policy to sustain a common law wrongful discharge count (Count Two);

3. Plaintiff asserts a new cause of action alleging "tortious interference with a defined monetary benefit from [a] third party." (Count Three). As Defendants argue, this is not a recognized tort in New Jersey. Defendants note that the most analogous tort is a claim for tortious interference with a business relation or contract, but that is not pled. (Def. Opp. At 7-8, ECF No. 15). Plaintiff fails to raise a cause of action upon which relief may be granted. As such, it is futile. Fed. R. Civ. P. 12(b)(6).

4. Count Nine of the proposed amended complaint alleges intentional infliction of emotional distress. As noted, there is a failure to show any extreme and outrageous conduct. The only allegation is that Plaintiff was "under the duress of that meeting with" Krebill, his boss, about his employment. (ECF No. 11-2, ¶ 10). This does not show extreme conduct sufficient to give rise to a cause of action.

As noted, the above four amendments are futile, and shall not be included in the proposed amended complaint. There is one new cause of action that was discussed at oral argument. Plaintiff's counsel claimed that Plaintiff was ill with COVID, and when he returned to work, he was allegedly fired for having been out sick. Accordingly, Plaintiff seeks to allege a violation of NJLAD. The Court

reserves on the merits of this claim, but Plaintiff should have an opportunity to plead it. The Court notes that "the NJLAD prohibits employment discrimination on the basis of a disability." *Rich v. New Jersey*, 294 F. Supp. 3d 266, 278 (D.N.J. 2018) (*citing Victor v. New Jersey*, 4 A.3d 126, 141 (N.J. 2010)). Under the NJLAD, a plaintiff must allege that: "(1) he or she has a disability or is perceived by the employer as disabled; (2) he or she was qualified for the position from which he or she was discharged; (3) he or she has suffered an adverse employment action because of that disability; and (4) the employer sought someone else to do the same work." *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520, 535 (D.N.J. 2008). Here, Plaintiff's counsel argued that it was included in the original filing. Quite frankly, I did not recognize same as an alleged cause of action. (Proposed Amended Compl. at ¶¶18-19).

In conclusion, Plaintiff may file an amended complaint that is subject to the provisions of this Memorandum.

### ORDER

This matter having come before the Court on Defendants' motion to dismiss (ECF No. 3) as well as Plaintiff Derek Greenspan's motion to amend the complaint (ECF No. 11); and the Court having considered the submissions of the parties; and having heard oral argument; and for good cause having been shown;

IT IS on this 31st day of March, 2022;

ORDERED that Defendant's motion to dismiss (ECF No. 3) is granted in part and denied in part as set forth in the Memorandum; and it is further

ORDERED that Defendant's motion to dismiss is denied as to Count 6 of the Complaint; and it is further

ORDERED that Plaintiff's motion to file an amended complaint is granted in part and denied in part as set forth in the Memorandum; and it is further

ORDERED that the proposed amended complaint must be revised and refiled within thirty (30) days.

_____
PETER G. SHERIDAN, U.S.D.J.